VERNIE PEEK v. HORACE SHOOK, EXECUTOR OF THE LAST WILL AND TESTAMENT OF LIZZIE SHOOK, DECEASED.

(Filed 28 February, 1951.)

**1. Evidence § 32—Testimony incompetent under G.S. 8-51.**

In order for testimony to be incompetent under G.S. 8-51, the witness must be a party to the action or a person interested in the event or a person from, through, or under whom a party or interested person derives his interest or title; the witness must be testifying in his own behalf or in behalf of the party succeeding to his title or interest; the witness must be testifying against the personal representative of a deceased person or the committee of a lunatic or a person deriving his title or interest from, through, or under a deceased person or lunatic; and the testimony must concern a personal transaction or communication between the witness and the deceased person or lunatic.

**2. Same—**

Testimony otherwise incompetent under G.S. 8-51 is rendered admissible when the personal representative of a deceased person, or the committee of a lunatic, or the person deriving his title or interest from, through, or under the deceased person or lunatic, is examined in his own behalf, or the testimony as to declarations of the deceased person or lunatic is given in evidence concerning the same transaction or communication.

**3. Same—**

A personal transaction or communication within the purview of G.S. 8-51 is anything done or said between the witness and the deceased person or lunatic tending to establish the claim being asserted against the personal representative of the deceased person, or the committee of the lunatic, or the person deriving his title or interest from, through, or under the deceased person or lunatic.

**4. Same—**

    A person seeking to recover from the estate for personal services rendered a decedent is precluded by G.S. 8-51 from testifying that he expected to receive pay for his services "after she (the decedent) said go ahead" since such testimony tends to prove deceased's agreement to pay for the services.

**5. Same—**

    Since personal services rendered by plaintiff to decedent are of necessity personal transactions between them, plaintiff may not testify directly that he rendered such services nor establish this fact indirectly by testifying that he expected pay for such services or as to their value, or that he had not been paid for them.

APPEAL by defendant from *Bennett, Special Judge,* and a jury, at the October Term, 1950, of MADISON.

Civil action against an estate for the reasonable value of services allegedly rendered by plaintiff to decedent in her lifetime pursuant to an express contract.

The plaintiff offered the testimony of others tending to show that his wife's mother, the decedent, who was aged and ill, moved to his home on 24 November, 1947, and resided there until her death on 29 June, 1948; that during this period of time he boarded, lodged, nursed, and took care of the decedent; and that he did these things for the decedent pursuant to the following conversation which he had with her on the day of her arrival: "She told him she wanted him to take care of her, (and to go ahead) and do all that was needed to be done for her, and she would see he got pay for it, and he told her he would."

The plaintiff testified in person over the objection and exception of the defendant that he "was expecting . . . to receive pay for what was done for" the decedent "after she said go ahead"; that his services to the decedent were "worth $200.00 a month . . . the first three months" and "$400.00 a month . . . the next four months"; and that he had not received any compensation from the decedent for his services except the sum of $133.00, which represented the proceeds of seven checks issued to the decedent by the Welfare Department of Madison County.

There was a verdict and judgment in favor of plaintiff for $1,800.00, and the defendant appealed, assigning errors.

*Calvin R. Edney for plaintiff, appellee.*
*Carl R. Stuart for defendant, appellant.*

ERVIN, J. The defendant bases his objection to the admission of the evidence given by the plaintiff in person upon the statute now codified as G.S. 8-51.

This statute does not render the testimony of a witness incompetent in any case unless these four questions require an affirmative answer:

1. Is the witness (a) a party to the action, or (b) a person interested in the event of the action, or (c) a person from, through or under whom such a party or interested person derives his interest or title?

2. Is the witness testifying (a) in his own behalf or interest, or (b) in behalf of the party succeeding to his title or interest?

3. Is the witness testifying against (a) the personal representative of a deceased person, or (b) the committee of a lunatic, or (c) a person deriving his title or interest from, through or under a deceased person or lunatic?

4. Does the testimony of the witness concern a personal transaction or communication between the witness and the deceased person or lunatic?

Even in instances where these four things concur, the testimony of the witness is nevertheless admissible under an exception specified in the statute itself if the personal representative of the deceased person, or the committee of the lunatic, or the person deriving his title or interest from, through, or under the deceased person or lunatic, is examined in his own behalf, or the testimony of the deceased person or lunatic is given in evidence concerning the same transaction or communication.

Somewhat similar analyses of the statute appear in the following authorities: *Bunn v. Todd,* 107 N.C. 266, 11 S.E. 1043; Stansbury on the North Carolina Law of Evidence, section 66.

A personal transaction or communication within the purview of the statute is anything done or said between the witness and the deceased person or lunatic tending to establish the claim being asserted against the personal representative of the deceased person, or the committee of the lunatic, or the person deriving his title or interest from, through or under the deceased person or lunatic. *Davis v. Pearson,* 220 N.C. 163, 16 S.E. 2d 655; *Boyd v. Williams,* 207 N.C. 30, 175 S.E. 832.

When these rules are applied to the case at bar, it is manifest that the receipt of the testimony given by the plaintiff in person contravened the statute. The plaintiff was a party to the action. He was testifying in his own interest against the personal representative of a deceased person. His testimony concerned things done or said between him and the deceased tending to establish his claim against the estate of the deceased. The defendant did not "open the door" for the admission of the plaintiff's evidence by introducing his own testimony or that of the deceased in relation to these things.

This conclusion finds abundant support in many of our decisions. The statement of the plaintiff that he was expecting to receive pay for what was done for the decedent "after she said go ahead" tended to prove a contract with the decedent, and ought to have been rejected under the

decisions holding that a person who is making a contract claim against a decedent's estate is precluded by the statute from testifying as to the agreement between him and the decedent out of which the claim arises. *Hager v. Whitener,* 204 N.C. 747, 169 S.E. 645; *Sherrill v. Wilhelm,* 182 N.C. 673, 110 S.E. 95; *Pope v. Pope,* 176 N.C. 283, 96 S.E. 1034; *Knight v. Everett,* 152 N.C. 118, 67 S.E. 328; *Poston v. Jones,* 122 N.C. 536, 29 S.E. 951; *Barbee v. Barbee,* 108 N.C. 581, 13 S.E. 215; *Armfield v. Colvert,* 103 N.C. 147, 9 S.E. 461.

Moreover, this statement and the other testimony now under scrutiny tend to show by indirection that services of a personal character looking toward the physical comfort of the decedent were rendered by the plaintiff. In the very nature of things, these services had to be performed by the plaintiff in the presence of the decedent or with her knowledge or consent. Hence, they constituted personal transactions between the plaintiff and the decedent, and the plaintiff was barred by the statute from testifying directly as to them. *Price v. Pyatt,* 203 N.C. 799, 167 S.E. 69; *Pulliam v. Hege,* 192 N.C. 459, 135 S.E. 288; *Brown v. Adams,* 174 N.C. 490, 93 S.E. 989, L.R.A. 1918 C, 911; *Davidson v. Bardin,* 139 N.C. 1, 51 S.E. 779; *Kirk v. Barnhart,* 74 N.C. 653. The law will not permit a litigant to beat a legal devil around the stump. As a consequence, a claimant is incompetent under the statute to testify as to the value of personal services rendered by him to the decedent (*Knight v. Everett,* 152 N.C. 118, 67 S.E. 328; *Dunn v. Currie,* 141 N.C. 123, 53 S.E. 533; *Stocks v. Cannon,* 139 N.C. 60, 51 S.E. 802), or to testify that he has not been paid for such services by the decedent. *McGowan v. Davenport,* 134 N.C. 526, 47 S.E. 27; *Benedict v. Jones,* 129 N.C. 475, 40 S.E. 223; *Dunn v. Beaman,* 126 N.C. 766, 36 S.E. 172; *Woodhouse v. Simmons,* 73 N.C. 30. Such testimony necessarily tends to disclose by indirection that the claimant rendered the personal services in question to the decedent.

The erroneous admission of the testimony given by the plaintiff in person entitles the defendant to a

New trial.